## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

------------------------------------------------------------ x

|  |  |  |
|---|---|---|
| In re | : | **Chapter 11** |
|  | : |  |
| **EXIDE HOLDINGS, INC.**, *et al.*, | : | **Case No. 20-11157 (CSS)** |
|  | : |  |
| Debtors.[1] | : | **(Joint Administration Requested)** |
|  | : |  |

------------------------------------------------------------ x

### MOTION OF DEBTORS FOR AUTHORIZATION TO (I) IMPLEMENT MANDATORY SETTLEMENT PROCEDURES FOR NON-PERFORMING PROPERTIES AND (II) ABANDON SUCH PROPERTIES, IF NECESSARY

Exide Holdings, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, "**Exide**" or the "**Company**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### Preliminary Statement[2]

1.      As one of the world's largest lead-acid battery manufacturers, Exide has always endeavored to comply with federal, state, and local environmental regulations, and to preserve the health and safety of its employees and their surrounding communities.  In connection with these efforts, the Company owns[3] and maintains twenty-three (23) non-performing properties across the United States and one (1) non-performing property in Canada (collectively, the

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are Exide Holdings, Inc. (5504), Exide Technologies, LLC (2730), Exide Delaware LLC (9341), Dixie Metals Company (0199), and Refined Metals Corporation (9311). The Debtors' mailing address is 13000 Deerfield Parkway, Building 200, Milton, Georgia 30004.

[2]      Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Messing Declaration (as defined herein).

[3]      The Debtors own all of the NPPs other than the NPP located in Commerce, California and portions of the NPPs located in Bristol, Tennessee and Florence, Mississippi (Ellis Street).

"**NPPs**"), of which (i) eight (8) NPPs have been remediated and (ii) sixteen (16) NPPs are properties that are subject to ongoing environmental remediation efforts.[4]  The Company and its predecessor entities have owned a subset of the NPPs since the 1970s and have retained such properties through two previous chapter 11 restructurings that involved the execution of various settlement agreements with regulatory agencies for the remediation of such NPPs.

2.       Unlike their predecessors, however, the Debtors do not intend to pursue a recapitalization transaction to emerge from the instant proceedings as a reorganized business.  As discussed in more detail in the Messing Declaration, the Debtors are conducting a postpetition marketing and sale process for the sale of substantially all of their North American and European assets.  With respect to any assets that the Debtors are unable to sell to third party purchasers, the Debtors intend to liquidate or abandon such assets.  Simply put, at the end of these chapter 11 cases, the Debtors will not be in business, and as such, they will no longer be able to retain and support the ongoing maintenance and remediation of the NPPs.  It is against this backdrop that the Debtors seek to commence good faith negotiations at the outset of these chapter 11 cases with various governmental regulatory agencies (each, an "**Agency**" and collectively, the "**Agencies**")[5] concerning the orderly transfer of the NPPs.

3.       As set forth more fully herein, the Debtors respectfully request that the Court establish settlement procedures (the "**Settlement Procedures**") that enable the Debtors to (i) continue their postpetition marketing efforts to sell as many of the NPPs as possible without the distraction and cost of potentially unnecessary litigation at this critical juncture, (ii) engage in good faith negotiations with the Agencies, including mediation, if necessary, to obtain an agreed upon

---

[4]      A complete list of the NPPs is set forth on **Exhibit B**.

[5]      A complete list of the Agencies is set forth on **Exhibit C**.

solution for the orderly transition of any NPPs that the Debtors are unable to sell and any related issues, and (iii) to the extent settlement negotiations and mediation are not successful, proceed on an expedited timeline for the contested abandonment of the NPP(s) at issue.

4.    More specifically, pursuant to the Settlement Procedures, the Debtors and the Agencies will be required to do the following:

a.    **Initial Settlement Conference**.  The Debtors and relevant Agency will be required to participate in an initial telephonic settlement conference among the Debtors, the Agency, and their respective advisors, on an agreed upon date.  If the settlement discussions continue following the initial settlement conference and the parties reach an agreement, the Debtors shall file a notice of settlement with the Court setting forth the terms of the agreement and providing parties in interest with an opportunity to object to such settlement.

b.    **Mediation Stage**.  If the Debtors and the relevant Agency (i) are unable to agree upon an acceptable date for the initial settlement conference or (ii) do not reach a settlement by June 30, 2020 (as extended upon mutual agreement), the parties shall proceed to the mediation stage.  All mediation proceedings shall be conducted by the Mediator(s) and governed by Rule 9019-5 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware ("**Local Rule 9019-5**").

c.    **Contested Abandonment Motion**.  If the Debtors and the relevant Agency are unable to reach a settlement by July 14, 2020 through mediation, the parties shall present the Court with a proposed scheduling order setting forth applicable deadlines for the resolution of the Debtors' proposed abandonment of the relevant NPP under section 554(a) of the Bankruptcy Code.

5.    The overarching goal of establishing and implementing the Settlement Procedures is simple—to implement the orderly transfer of the NPPs from the Debtors' liquidating estates in an efficient manner that minimizes the risk of harm to public health and safety as required by the standards set forth in *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494 (1986), as further described herein.  ***Importantly, the Settlement Procedures do not require Agencies to reach a settlement with the Debtors***.  Rather, the Settlement Procedures are designed to foster open communications among the parties and facilitate the efficient administration of these chapter

11 cases while significantly reducing the incurrence of unnecessary costs associated with litigating abandonment issues under section 554(a) of the Bankruptcy Code before the Court.

6.     Importantly, the Debtors will continue to take all requisite steps, including the expenditure of costs, necessary to avoid the risk of imminent harm to public health and safety at the NPPs during the implementation of the Settlement Procedures.  The duration contemplated by the Settlement Procedures will not pose a risk of environmental harm.  Rather, the goals of environmental preservation, health, and safety will be advanced to the extent the Settlement Procedures enable the smooth transition of the NPPs to third parties.

7.     For the reasons stated herein, the Debtors respectfully request that the Court enter the proposed order approving the Settlement Procedures, annexed hereto as **Exhibit A**.

### Background

8.     On the date hereof (the "**Commencement Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

9.     Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

10.     Information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Roy Messing in Support of Debtors' Chapter 11 Petitions and First Day Relief*,

sworn to on the date hereof (the "**Messing Declaration**").  An overview of the Mediators (as defined herein) is set forth in the *Declaration of Paul R. Genender In Support of Motion of Debtors For Authorization to (I) Implement Mandatory Settlement Procedures For Non-Performing Properties and (II) Abandon Such Properties, If Necessary* (the "**Genender Declaration**").  The Messing Declaration and the Genender Declaration have been filed with the Court contemporaneously herewith and are incorporated by reference herein.

## Jurisdiction

11.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

12.     Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

13.     By this Motion, pursuant to section 105(a) of the Bankruptcy Code and Local Rule 9019-5, the Debtors respectfully request authorization to implement the Settlement Procedures, including, without limitation, the mandatory settlement and mediation process therein, with respect to the orderly transfer or subsequent abandonment of the NPPs set forth on **Exhibit B**.

**General Background**

I.    **2002 Bankruptcy and 2013 Bankruptcy**

14.    The Company is a global leader in stored electrical energy solutions and one of the world's largest producers and recyclers of lead-acid and lithium-ion batteries, with operations in more than twenty (20) countries.  The Company is headquartered in Milton, Georgia and its North American operations include four (4) battery manufacturing facilities, two (2) battery component manufacturing facilities, and two (2) recycling facilities.   The Company has historically made a priority of safety and compliance with federal, state, and local environmental regulation.  Over time, however, the Company has ceased its business operations at several of the NPPs and limited its activity at each NPP to property maintenance and/or environmental remediation, at all times working to ensure that the NPPs do not pose a risk to public health.

15.    The Company owned the NPPs in April 2002 when its predecessor holding company filed a chapter 11 petition in this District (the "**2002 Bankruptcy**") for the first time and maintained its ownership of the NPPs when it emerged from the 2002 Bankruptcy two (2) years later.  The Company entered into various settlement agreements with environmental regulatory agencies throughout the 2002 Bankruptcy, including settlement agreements with the U.S. Environmental Protection Agency (the "**EPA**") and the National Oceanic and Atmospheric Administration (the "**NOAA**"), whereby the Company agreed to perform necessary environmental work at each of the sites it owned, including the NPPs.

16.    A similar process unfolded when the Company's predecessor holding company filed its second chapter 11 petition in this District in June 2013 (the "**2013 Bankruptcy**").   Shortly before the 2013 Bankruptcy, the California Department of Toxic Substances Control (the "**DTSC**") issued an order in April 2013 suspending the Company's

operations at its lead-recycling facility in Vernon, California (the "**Vernon Facility**"), alleging that the facility's underground storm-water system and furnace emissions failed to comply with applicable regulatory standards.  The Company also recently had ceased its recycling operations in Frisco, Texas, and Reading, Pennsylvania, prior to filing the 2013 Bankruptcy.  The Company emerged from bankruptcy two (2) years later in April 2015 and maintained its ownership of substantially all of the NPPs, which remain the property of the Debtors today.

17.     The remediation efforts undertaken by the Company in connection with the NPPs vary in scope and stage across the various sites.  For example, the Company has completed remediation at its Kankakee, Illinois site pursuant to a voluntary agreement with Illinois state authorities.  With respect to the Vernon Facility, the Company has entered into a series of agreements with federal and state authorities that required the Company to close the Vernon Facility and remit substantial payments in connection with remediation measures at the site.  The Company's compliance efforts have entailed significant expenditures.  In 2018 and 2019 alone, the Company spent approximately $35.6 million and $29.5 million, respectively, in environmental remediation costs.  The Company also maintains a total of approximately $80 million in financial assurances (including surety bonds and environmental trust funds) in connection with its environmental obligations at the NPPs across the United States.

18.     The Company will continue to take the necessary measures to prevent the risk of imminent and identifiable harm to the public health and safety during the implementation of the Settlement Procedures.  Notably, however, the Debtors now stand in a different posture than their predecessors in the 2002 Bankruptcy and 2013 Bankruptcy.  Unlike their predecessors, the Debtors will not be emerging from the instant proceedings as a reorganized business entity.  The Debtors, with the assistance of their legal and financial advisors, are conducting a postpetition

RLF1 23448333v.1

marketing and sale process of their North American and European assets, including the NPPs, and intend to conduct an orderly wind down of their assets primarily through sales conducted pursuant to section 363 of the Bankruptcy Code.  As such, the Debtors will no longer be able to retain and support the ongoing maintenance and remediation of the NPPs following the conclusion of these chapter 11 cases.

## II.    Current Status of the NPPs

19.    As noted above, the Company and its predecessors have successfully completed environmental remediation on a number of the NPPs, eliminating from those sites any associated environmental liability.  With respect to eight (8) NPPs for which some environmental liability remains, there are financial assurances in place that the Company estimates will cover, or at least significantly defray, the expected cost of remediation at such sites.  For example, the Company estimates that approximately $26 million in financial assurances are available to address onsite contamination at the Vernon Facility and approximately $25 million in financial assurances are available to address contamination at the NPP located in Frisco, Texas.  Importantly, as noted above, the Debtors are ensuring that the NPPs are properly supervised and maintained to avoid the risk of imminent harm to public health and safety at the NPPs during these chapter 11 cases.  The Debtors are currently incurring approximately $1.6 million on a monthly basis in connection with such efforts.

20.    The Debtors have been engaging and continue to engage in discussions with potential third party purchasers in connection with the NPPs in an effort to sell the NPPs through the postpetition marketing and sale process.  For that reason, postpetition marketing efforts continue, however, the Debtors also seek to simultaneously engage in good faith negotiations with the Agencies to develop a consensual transition plan for the orderly transfer of such properties to

8

the appropriate entity (whether that entity is a third party purchaser or an entity designated by the relevant Agency). As set forth herein, the main objective of the Settlement Procedures is to facilitate this process while simultaneously reducing the costs associated with potential litigation of abandonment issues arising under section 554(a) of the Bankruptcy Code.

**Overview of Legal Issues Arising in Connection With Abandonment**

21.     The Debtors hope to reach a consensual resolution with each Agency in connection with the orderly transfer of every NPP, however, in the event the parties are unable to reach a settlement following the mandatory settlement and mediation stages set forth in the Settlement Procedures, the Debtors will proceed with what is anticipated to be a contested abandonment motion for the specific NPP at issue. The proposed scheduling order will include deadlines for the submission of relevant briefing from the Debtors and the relevant Agency and an expedited discovery process for the submission of, among other things, evidence and expert reports.

22.     Although this Motion is not meant to set forth the Debtors' affirmative case with respect to abandonment of the NPPs, the Debtors believe that they will be able to satisfy the legal standards governing abandonment to the extent a consensual resolution is not reached with respect to any of the NPPs. Section 554(a) of the Bankruptcy Code provides:

> After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

11 U.S.C. § 554(a). The case law makes clear that a debtor has standing to seek abandonment of its property pursuant to section 554(a) of the Bankruptcy Code, as long as a debtor satisfies two basic requirements. First, the property to be abandoned must be property of the debtor's estate. 11 U.S.C. §§ 541 and 554. Second, the property to be abandoned must be burdensome or of

inconsequential value or benefit to the debtor's estate.  *N.J. Dep't of Envtl. Prot. v. Atkinson (In re St. Lawrence Corp.),* 248 B.R. 734, 740 (D.N.J. 2000).  If the analysis ended there, there would be no question that the Debtors should be authorized to abandon the NPPs.  Notwithstanding a debtor's broad authority under section 554(a) of the Bankruptcy Code, the U.S. Supreme Court limited such authority, finding that a bankruptcy court "does not have the power to authorize an abandonment without formulating conditions that will adequately protect the public's health and safety" and that "a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 506-07 (1986).  The Supreme Court noted that this exception to the abandonment power applied narrowly and qualified its holding with a footnote:

> This exception to the abandonment power vested in the trustee by § 554 ***is a narrow one***.  It does not encompass a speculative or indeterminate future violation of such laws that may stem from abandonment.  The abandonment power is not to be fettered by laws or regulations not reasonably calculated to protect the public health or safety from imminent and identifiable harm.

*Id.* at 507 n.9 (emphasis added).  In the wake of *Midlantic*, courts have adopted the Supreme Court's two-prong test under which abandonment is permitted unless (i) the abandoned property poses an "imminent and identifiable harm" at the time of the abandonment <u>and</u> (ii) the abandonment would violate applicable environmental laws or regulations reasonably calculated to protect the public health or safety.  *See In re St. Lawrence Corp.*, 248 B.R. at 739.[6]

23.    Pursuant to the Settlement Procedures, the Court will only be asked to rule upon a contested abandonment motion if, following the mandatory settlement and mediation stages

---

[6]    The bankruptcy court in *St. Lawrence* held that "the restrictions on abandonment identified in *Midlantic* do not apply unless each of the following conditions have been demonstrated:  (1) an identified hazard exists that poses a risk of imminent and identifiable harm to the public health and safety; (2) abandonment of the property will

set forth in the Settlement Procedures, the Debtors and an Agency are unable to reach a settlement governing the orderly transfer of the NPP at issue.

## Overview of Settlement Procedures

24.    As previously discussed, approval of the Settlement Procedures will facilitate the efficient administration of these chapter 11 cases and significantly reduce the incurrence of unnecessary costs associated with litigating abandonment issues under section 554(a) of the Bankruptcy Code before the Court.  Many common issues exist with respect to the NPPs and the Agencies, including inquiries from the Agencies regarding (i) the current status of any remediation efforts at the relevant NPP, (ii) an overview of financial assurances available to the relevant Agency (if any), (iii) appraisal values of the relevant NPP, and (iv) the Debtors' transition plan to effectuate the safe and orderly turnover of the NPP to the relevant Agency (or an entity specified by the Agency).  The Settlement Procedures will ultimately enable the Debtors to promote judicial efficiency in these complex chapter 11 cases and administer a streamlined settlement process to focus the efforts of all parties toward a common objective—ensuring the smooth transition of NPPs in a manner that minimizes harm to the public health and safety.

25.    For the avoidance of doubt, the Settlement Procedures do not obligate the parties to settle—the procedures simply provide an orderly and structured framework for parties

---

violate a state statute or regulation; (3) the statute or regulation being violated is reasonably designed to protect the public health and safety from imminent and identifiable harm caused by identified hazards; and (4) compliance with the statute or regulation would not be so onerous as to interfere with the bankruptcy administration itself."  *Id.* at 739.  With respect to the fourth factor, the bankruptcy court explained that "[a]lthough the Supreme Court did not reach this question, it implied that some state laws may impose conditions too onerous on the bankruptcy proceeding to be enforced.  Examples might include the following:  (1) when the estate lacks unencumbered assets with which to comply with state law, (2) when compliance would take too long for the proceeding to be expeditious, or (3) when compliance would allow environmental authorities to completely usurp administration of the case. . . In such cases, the bankruptcy court is free to formulate conditions short of full compliance with state law that will adequately protect the public's health and safety."  *Id.* at 739 n.6 (internal citation omitted).

RLF1 23448333v.1

to engage in good faith discussions at the outset of these chapter 11 cases and represent a balanced approach to efficiently resolve disputes without costly litigation and unnecessary expenditure of judicial and estate resources. The goals of this Motion are to obtain the same benefits contemplated by Local Rule 9019-5, which provides for procedures governing mediation of matters in bankruptcy cases and adversary proceedings. Accordingly, the Debtors request that, unless specified otherwise in the Settlement Procedures, Local Rule 9019-5 shall apply to any mediation to be conducted pursuant to an order approving this Motion.

26.    The Settlement Procedures are set forth in the chart below:

| OVERVIEW OF SETTLEMENT PROCEDURES[7] | |
| --- | --- |
| **Mandatory Participation** | A. Following service of a Settlement Notice (as defined herein) on an Agency (i) compliance with the Settlement Procedures is mandatory and (ii) no party is required to settle or compromise any dispute or enter into a particular settlement or compromise; provided, however, the Debtors and each Agency must serve the required responses, engage in the specified communications to discuss settlement, participate in any mediation in good faith, follow directions of the Mediator (as defined herein), and otherwise comply with the Settlement Procedures in good faith.<br><br>B. All rights, remedies, claims, and defenses of the Debtors and each Agency shall not be impaired, waived, or compromised in any further proceedings in these chapter 11 cases in the event the parties are unable to reach a settlement or compromise following such parties' good faith participation in the Settlement Procedures. |
| **Initial Settlement Conference** | A. With respect to each NPP, the Debtors may initiate settlement discussions with the relevant Agency by serving each Agency with (i) a copy of an order approving this Motion and (ii) a notice setting forth the Debtors' request to engage in settlement discussions regarding the Debtors' proposed abandonment of the relevant NPP (the |

---

[7]    The term "Agency" as used in the Settlement Procedures shall be deemed to refer to more than one Agency to the extent required.

<table>
<tr><td></td><td>

"**Settlement Notice**"), the form of which is annexed as <u>Schedule 1</u> to the Proposed Order.

B. The Debtors propose that the service on or notice to an Agency will be deemed adequate if such service or notice is provided to the Agency's address set forth on <u>Exhibit C</u> annexed hereto by (i) hand delivery, (ii) first class mail, or (iii) overnight mail.

C. The Settlement Notice will set forth the following:

    i. A selection of proposed dates and times for an initial telephonic conference among the Debtors, Weil, Gotshal & Manges LLP, Richards, Layton & Finger, P.A., the Agency, and the Agency's counsel (the "**Initial Settlement Conference**").

    ii. The contact information for the Debtors' legal and financial advisors in the event of any general inquiries ahead of the Initial Settlement Conference.

    iii. A statement setting forth that the Initial Settlement Conference, together with any continuations or rescheduled settlement calls or meetings arising from the Initial Settlement Conference, shall be subject to Rule 408 of the Federal Rules of Evidence and the confidentiality provisions of Local Rule 9019-5.

D. Each Agency identified in the Settlement Notice must respond by acceptance of one of the proposed dates and times as promptly as possible.

E. The Initial Settlement Conference shall be allocated for approximately one (1) hour, which may be extended through mutual agreement of the parties. Subsequent settlement conferences may be scheduled by the parties.

</td></tr>
<tr><td>

**Agreement to Settle**

</td><td>

A. If the Debtors and the Agency reach a settlement, the parties shall execute a settlement agreement and general release (including confidentiality provisions) (the "**Settlement Agreement**") and, if the matter is in litigation or otherwise subject to an adversary proceeding, the Agency shall dismiss any applicable claims in such proceeding with prejudice upon approval of the Settlement Agreement (or as otherwise set forth in such Settlement Agreement).

</td></tr>
</table>

B.  Within five (5) calendar days upon executing a Settlement Agreement, the Debtors shall file a notice (the "**Settlement Agreement Notice**") with the Court setting forth the following:

    i.  The execution date of the Settlement Agreement, including the parties thereto.

    ii.  A concise summary of the settlement terms and, if applicable, the transition plan for the relevant NPP.

    iii.  A proposed order approving the Debtors' entry into the Settlement Agreement and approval of the terms thereof (the "**Proposed Settlement Order**").

C.  The Debtors shall (i) serve the Settlement Agreement Notice on the parties listed below and such other parties as the Court may order (collectively, the "**Objection Notice Parties**") and (ii) cause the Settlement Agreement Notice to be published on the website maintained by the Debtors' claims and noticing agent in these chapter 11 cases (https://cases.primeclerk.com/Exide2020), a notice containing information about the applicable Settlement Agreement Notice.  The Objection Notice Parties include:

    i.  <u>Office of the U.S. Trustee</u>:  844 N. King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Linda J. Casey, Esq.)

    ii.  <u>Counsel to the Ad Hoc Group</u>:  Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Alice Belisle Eaton, Esq. and Robert Britton, Esq.)

    iii.  <u>Counsel to the DIP Agent</u>: Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California 90071 (Attn: Robert A. Klyman, Esq. and Matthew G. Bouslog, Esq.)

    iv.  Counsel to any statutory committee of unsecured creditors appointed in these chapter 11 cases.

    v.  The non-Debtor parties to the Settlement Agreement.

| | |
|---|---|
| | vi. Any party who may be affected if the relief requested in the Settlement Agreement Notice is granted.<br><br>D. Objections to the terms of a Settlement Agreement (a "**Settlement Agreement Objection**") must:<br><br>   i. Be in writing;<br><br>   ii. State the name and address of the objecting party and the amount and nature of the claim or interest of such party (unless such party is the U.S. Trustee);<br><br>   iii. State with particularity the basis and nature of any objection;<br><br>   iv. Conform to the Bankruptcy Rules and Local Rules; and<br><br>   v. Be filed with the Court and served in accordance with the Local Rules by no later than ten (10) calendar days after the filing and service of the relevant Settlement Agreement Notice (the "**Settlement Agreement Objection Deadline**").<br><br>E. If a timely Settlement Agreement Objection is filed and served with respect to an applicable Settlement Agreement and such objection cannot be consensually resolved, the Debtors shall request a hearing before the Court on approval of the applicable Settlement Agreement.<br><br>F. If no timely Settlement Agreement Objection is filed and served with respect to an applicable Settlement Agreement, or if there is such an objection and it is consensually resolved, the Court may enter the Proposed Settlement Order approving the Settlement Agreement upon the expiration of the Settlement Agreement Objection Deadline, or the resolution of such objection upon the submission of the  Proposed Settlement Order under certification of no objection or certification of counsel, as applicable. |
| **Mediation Stage** | A. If the Debtors and the relevant Agency are unable to reach a settlement by June 30, 2020 (as extended upon mutual agreement), the parties shall proceed to mediation (each, a "**Mediation**" and the applicable mediator, the |

RLF1 23448333v.1

"**Mediator**"), where the Mediator shall hear and preside over all mediations hereunder.

B.  The Mediator shall have the broadest possible discretion consistent with Local Rule 9019-5 (as modified by any order approving the Motion), including the ability to consolidate mediations involving the same Agency upon application by such Agency and consultation with the Debtors.

C.  The Debtors and Agency shall jointly contact the Mediator to schedule the initial mediation date.

D.  At the option of the Mediator, all mediation proceedings will take place either (i) telephonically or (ii) by video conference.

E.  Unless otherwise instructed by the Mediator, each party shall submit directly to the Mediator and serve on all counsel such materials (the "**Submission**") in form and content as the Mediator directs.  Prior to the Mediation, the Mediator may discuss with the participants to determine what materials would be helpful.   The Submission shall not be filed with the Court and the Court shall not have access to the Submission.

F.  Unless otherwise ordered by the Mediator, the following persons must participate in the Mediation (either telephonically or by video conference) (the "**Mediation Parties**"):

  i.  A Debtor representative;

  ii.  If the party is not a natural person, including a governmental entity, a representative who is not the party's attorney of record and who has full authority to negotiate and settle the matter on behalf of the party;

  iii.  If the party is a governmental entity that requires settlement approval by an elected official or legislative body, a representative who has authority to recommend a settlement to the elected official or legislative body;

  iv.  The attorney who has primary responsibility for each party's case, including Delaware counsel if engaged at the time of mediation regardless of whether Delaware counsel has primary responsibility for a party, unless Delaware counsel requests to be and is excused from

|  | attendance by the Mediator in advance of the Mediation; and |
|---|---|
|  | v. Other interested parties, such as insurers or indemnitors or one or more of their representatives, whose presence is necessary for a full resolution of the matter assigned to mediation. |
|  | G. Willful failure to attend any Mediation and any other material violation of Local Rule 9019-5 shall be reported to the Court by the Mediator any may result in the impositions of sanctions by the Court.  Any such report of the Mediator shall comply with the confidentiality requirement of Local Rule 9019-5(d). |
|  | H. The Mediation shall end (i) upon mutual consent of the Debtors and the Agency or (ii) by the Mediator, in the Mediator's sole and reasonable discretion. |
|  | I. No later than July 17, 2020, the Mediator shall file with the Court a certificate (a "**Certificate of Completion**") showing compliance or non-compliance with the mediation requirements of the Settlement Procedures and whether or not a settlement has been reached.  Regardless of the outcome of the Mediation, the Mediator shall not provide the Court with any details of the substance of the Mediation. |
|  | J. If the Debtors and Agency reach a settlement as a result of Mediation, the parties shall execute a Settlement Agreement as specified herein and the Debtors shall file a Settlement Agreement Notice in accordance with the terms set forth herein. |
|  | K. If the Debtors and Agency are unable to reach a settlement following Mediation, the Debtors and Agency shall present the Court with a proposed scheduling order ("**Proposed Scheduling Order**") setting forth applicable deadlines for the resolution of the Debtors' proposed abandonment of the relevant NPP under section 554(a) of the Bankruptcy Code. |
| **Proposed Scheduling Order** | A. The Proposed Scheduling Order shall be filed no later than July 22, 2020. |
|  | B. The Proposed Scheduling Order shall provide for the following deadlines, unless mutually agreed to otherwise by the parties: |

|  |  |
|---|---|
|  | i.  The parties must conclude all fact discovery, including depositions, no later than August 4, 2020.<br><br>ii.  The Debtors shall file a motion seeking to abandon the relevant NPP no later than August 11, 2020.<br><br>iii.  The relevant Agency shall file a response to the Debtors' motion to abandon the relevant NPP no later than August 18, 2020.<br><br>iv.  A hearing must be held no later than August 25, 2020, subject to the Court's availability. |
| **Deadlines** | Notwithstanding anything contained herein, the deadlines contained herein may be modified solely by (i) the mutual consent of the Debtors and Agency or (ii) by order of the Court. |
| **Good Faith Participation** | A.  The Debtors and each Agency must participate in good faith with the Settlement Procedures.  If, after notice and a hearing, the Court determines that a party has not complied with the Settlement Procedures in good faith, the Debtors or Agency, as the case may be, may be subject to such sanctions as the Court deems appropriate in its sole discretion.<br><br>B.  If the Mediator reports to the Court that any party subject to the Settlement Procedures is not cooperating in good faith with the Settlement Procedures, the Court may, without the need for further motion by any party, schedule a hearing and order sanctions.  Litigation with respect to the issuance of sanctions shall not delay the commencement of the Mediation Stage of the Settlement Procedures.<br><br>C.  Sanctions may include, but are not limited to:<br><br>    i.  <u>Against Debtors</u>:  (a) reasonable attorneys' fees incurred by an Agency with respect to the Settlement Procedures after the receipt of a Settlement Notice and (b) fees and costs related to the Mediation.<br><br>    ii.  <u>Against Agency</u>:  (a) reasonable attorneys' fees incurred by the Debtors with respect to the Settlement Procedures after the sending of a |

| | |
|---|---|
| | Settlement Notice and (b) fees and costs related to the Mediation. |
| **Confidentiality** | A. The confidentiality provisions of Local Rule 9019-5(d) are incorporated into the Settlement Procedures by reference. No statements or arguments made or positions taken by the Mediator, the Debtors, or the Agency during any part of the process described herein, including the Initial Settlement Conference (together with any continuations or rescheduled settlement calls or meetings arising from the Initial Settlement Conference) and the Mediation Stage may be disclosed by the Mediator or any such parties or their attorneys and advisors to the Court or any third party.<br><br>B. All briefs, records, reports, and other documents received or made by the Mediator while serving in such capacity shall remain confidential and shall not be provided to the Court, unless they would be otherwise admissible. The Mediator shall not be compelled to disclose such records, reports, and other documents in connection with any hearing held by the Court. |
| **Motions to Compel Payment** | Subject to section 362(b)(4) of the Bankruptcy Code and solely during the period that the Debtors and applicable Agency are actively engaged in settlement discussions and mediation hereunder, the Agencies shall be precluded from filing motions to compel payment from the Debtors in connection with the applicable NPP or otherwise seek judicial relief related thereto. |
| **Existing Jury Trial and Arbitration Rights Unaffected** | Unless an Agency or the Debtors affirmatively waive their right to a jury trial or arbitration that otherwise may exist, participation in the Settlement Procedures shall not waive or otherwise modify such rights. All parties' rights and defenses to contest the assertion of a jury trial or arbitration are fully preserved. |
| **Fees** | Except as otherwise provided in the Settlement Procedures, each party to the Mediation shall bear its own costs and expenses incurred in connection with the Settlement Procedures, including Mediation, such as attorney's fees, travel, and meals. For the avoidance of doubt, the Debtors' estates shall bear the expenses of the reasonable fees and costs charged by the Mediator. |
| **Designation of Additional NPPs** | Nothing herein limits the Debtors' rights to designate additional NPP sites to those listed in **Exhibit B** annexed hereto. |

**Settlement Procedures Should Be Approved**

27.    Local Rule 9019-5 states that the Court "may assign to mediation any dispute arising in an adversary proceeding, contested matter *or otherwise in a bankruptcy case*." Local Rule 9019-5 (emphasis added).  Moreover, section 105(a) of the Bankruptcy Code grants bankruptcy courts the equitable power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a); *see also Official Comm. of Unsecured Creditors v. Bechtle (In re Labrum & Doak, LLP)*, 237 B.R. 275, 305 (Bankr. E.D. Pa. 1999) ("Section 105(a) of the Bankruptcy Code grants the Court broad equitable power to issue any order, process or judgment that is necessary or appropriate to advance the bankruptcy proceedings and matters related to the proceeding.") (citations omitted); *In re Patriot Nat'l, Inc.*, Case No. 18-10189 (KG), Feb. 28, 2018 Hr'g Tr. at 145:1-5 (Bankr. D. Del. Feb. 28, 2018) ("And the Court, of course, also has the power under Section 105, I think, to stay the actions and to order mediation.  So I am going to order the parties to the litigation to go to mediation.").

28.    Local Rule 9019-5 clearly contemplates that the Court may order matters to mediation by facilitating the use of mediation in *all matters arising in a bankruptcy case*.  The Debtors are requesting that the Court exercise its authority to implement the Settlement Procedures with respect to any abandonment disputes among the Debtors and the Agencies.  The litigation of such issues without exploring the possibility of whether the parties can reach an early resolution does not serve the interests of the Debtors, their estates, or the public at large.

29.    The Debtors are not pursuing a reorganization of their business in these chapter 11 cases.  And, although the Debtors are continuing their robust prepetition marketing and sale process on a postpetition basis, there is no guarantee that the Debtors will successfully sell all of their assets, including the NPPs, to  a third party purchaser.  In the event the Debtors are unable

to sell the NPPs, the Debtors will be forced to effectuate the transfer of such properties or abandon them.  As such, the objective of the Settlement Procedures is to ensure the safe and orderly abandonment of the NPPs in a manner that not only transfers the NPPs from a liquidating company that can no longer support the ongoing maintenance of such properties but also ensures that such transfers are conducted in a manner that significantly reduces the threat of harm to public safety.

30.    The Settlement Procedures represent a critical step in the Debtors' chapter 11 cases by expediting in the least expensive manner the resolution of disputes involving the Debtors' abandonment of the NPPs.  Absent the measures proposed herein, the resolution of legal issues arising under section 554(a) of the Bankruptcy Code with respect to every Agency would detrimentally impact and monopolize the Court's resources and the pursuit of endless litigation would serve no useful purpose other than to significantly increase legal costs for all involved.  The Settlement Procedures, on the other hand, impose none of these burdens while also preserving the substantive rights of all parties if a consensual resolution is not reached.

31.    The main objective of the Settlement Procedures is to provide an orderly and structured framework for good faith negotiations and mediation with the Debtors at the outset of these chapter 11 cases.  The process established pursuant to the Settlement Procedures should be approved because it (i) is balanced and fair by placing all Agencies on equal footing to resolve abandonment disputes, (ii) does not modify the substantive rights of any Agency, (iii) allows for a global settlement of disputes related to multiple NPPs and a single Agency, and (iv) preserves confidentiality to foster open communications among the Debtors and the Agencies.

32.    Moreover, section 105(a) of the Bankruptcy Code grants the Court authority to issue sanctions in the event any parties (including the Debtors) fail to participate in good faith with the Settlement Procedures.  *See Caldwell v. Unified Capital Corp. (In re Rainbow Magazine,*

RLF1 23448333v.1

*Inc.)*, 77 F.3d 278, 283-84 (9th Cir. 1996) (holding that bankruptcy courts have the power under section 105(a) to issue sanctions and rejecting the argument that bankruptcy courts lack such authority because they are Article I courts); *Burd v. Walters (In re Walters)*, 868 F.2d 665, 669 (4th Cir. 1989) (same); *In re NNN 400 Capital Ctr. 16, LLC*, No. 16-12728-JTD, 2019 WL 5073844, at *2 (Bankr. D. Del. Oct. 9, 2019) ("Section 105 gives the court broad power to take any action that is necessary or appropriate to enforce rules and prevent an abuse of the process. . . . This power includes the authority to impose sanctions, including an award of attorney's fees, if a party violates a court order or rule."); *In re French Bourekas, Inc.*, 175 B.R. 517, 525 (Bankr. S.D.N.Y. 1994) (holding that bankruptcy court can impose sanctions under section 105(a) of the Bankruptcy Code and its inherent power), *aff'd sub nom. Zwirn v. United Capital Corp. (In re French Bourekas Inc.)*, 195 B.R. 19 (S.D.N.Y. 1996); *Grand St. Realty, LLC v. McCord*, No. 04-CV-4738-CBA, 2005 WL 2436214, at *5-6 (E.D.N.Y. Sept. 30, 2005) (collecting cases and holding that bankruptcy court had authority under section 105(a) to impose sanctions against landlord and its counsel).  The Settlement Procedures clearly state that the imposition and level of sanctions will be determined by the Court in its sole discretion—under no circumstances can a technical default result in the imposition of automatic sanctions by the Court.  The Debtors set forth potential sanctions in the Settlement Procedures to place the Agencies on notice of the possible repercussions of blatantly ignoring the Settlement Procedures, however, the imposition and scope of sanctions will remain solely within the Court's discretion.

33.     The Debtors propose that Joseph J. Farnan, Jr. and John S. DeGroote serve as mediators for all settlement discussions with the Agencies that proceed to the Mediation Stage and that such appointment serves the interests of all parties, not merely the Debtors.  As set forth in the Genender Declaration, both Mr. Farnan and Mr. DeGroote are experienced mediators whose

practices focus on complex business disputes and bankruptcy proceedings. Mr. Farnan served as a United States District Judge for the District of Delaware from 1985 to 2010. During his tenure, Mr. Farnan presided over hundreds of trials, as well as bankruptcy proceedings and matters involving substantial environmental issues. Since retiring from the bench, Mr. Farnan has served as a mediator in complex commercial matters, bankruptcy proceedings, and matters involving environmental issues. Mr. DeGroote has served as a mediator and arbitrator in complex business disputes, including in bankruptcy and business-dissolution matters, since 2013. Mr. DeGroote has also served as a settlement administrator and as a liquidating trustee in connection with corporate chapter 11 bankruptcy proceedings. Before founding his mediation practice, Mr. DeGroote was the president of KPMG Consulting, LLC/BearingPoint, Inc., a $3-billion global consulting firm. In light of the above, the appointment of Joseph J. Farnan, Jr. and John S. DeGroote as mediators will facilitate the efficient administration of the Settlement Procedures in these chapter 11 cases and best position the maximum number of cases for resolution.

34.     The settlement and mediation process set forth in the Settlement Procedures is not the first of its kind. Judge Peck authorized similar settlement procedures in the chapter 11 cases of Lehman Brothers Holdings Inc. and its affiliated debtors (the "**Lehman Debtors**") in 2009. *See In re Lehman Bros. Holdings Inc., et al.*, No. 08-13555-JMP (Bankr. S.D.N.Y), ECF Nos. 4453, 5207. The Lehman Debtors were party to thousands of derivative contracts. In light of the complex nature of such derivative contracts and the common issues existing with respect thereto, the Lehman Debtors requested, and Judge Peck authorized, the implementation of alternative dispute resolution procedures to reduce the cost associated with enforcing the Lehman Debtors' affirmative claims under the derivative contracts, preserving the value available under such contracts, and promoting judicial efficiency in the chapter 11 cases. Many of the features set

RLF1 23448333v.1

forth in the Settlement Procedures were borrowed from the procedures approved by Judge Peck, including mandatory participation in settlement and mediation discussions and the imposition of sanctions in the bankruptcy court's discretion.

35.    As set forth herein, the fundamental purpose of the Settlement Procedures— and mediation in general—is to provide the Debtors and the Agencies an opportunity at the outset of these chapter 11 cases to reach consensual resolutions of any issues arising from the Debtors' abandonment of the NPPs under section 554(a) of the Bankruptcy Code in the face of an impending liquidation of its business.  The implementation of the Settlement Procedures will enable the Debtors to reduce unnecessary administrative expenses, avoid significant legal fees associated with needless litigation, preserve the Court's limited time and resources, and promote judicial efficiency by encouraging consensual resolution among the Debtors and the Agencies.

## Notice

36.    Notice of this Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware (Attn: Linda J. Casey, Esq.); (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) the Internal Revenue Service; (iv) the United States Attorney's Office for the District of Delaware; (v) attorneys for the Ad Hoc Group, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Alice Belisle Eaton, Esq. and Robert Britton, Esq.); (vi) attorneys for the Prepetition ABL Agents, Otterbourg P.C., 230 Park Avenue, New York, New York, 10169 (Attn: Daniel F. Fiorillo, Esq., David W. Morse, Esq., and Jonathan N. Helfat, Esq.); (vii) attorneys for the DIP Agents, Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California 90071 (Attn: Robert A. Klyman, Esq. and Matthew G. Bouslog, Esq.); (viii) the Banks; (ix) the Environmental Protection Agency and similar state environmental

agencies for states in which the Debtors conduct business; (x) the Agencies; (xi) the offices of the attorneys general for the states in which the Debtors conduct business; and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").

37.    The Debtors respectfully submit that no further notice is required.  No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

RLF1 23448333v.1

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  May 19, 2020
　　　　Wilmington, Delaware

/s/ Brendan J. Schlauch
RICHARDS, LAYTON & FINGER, P.A.
Daniel J. DeFranceschi (No. 2732)
Zachary I. Shapiro (No. 5103)
Brendan J. Schlauch (No. 6115)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile:  (302) 651-7701

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C. (*pro hac vice* pending)
Sunny Singh (*pro hac vice* pending)
Paul R. Genender (*pro hac vice* pending)
Jared R. Friedmann (*pro hac vice* pending)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*