## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

------------------------------------------------------------ x
: 
**In re** : **Chapter 11**
: 
**EXIDE HOLDINGS, INC.,** *et al.*, : **Case No. 20–11157 (CSS)**
: 
**Debtors.**[1] : **(Jointly Administered)**
: 
------------------------------------------------------------ x

## DECLARATION OF CHRISTOPHER ROBINSON IN SUPPORT OF CONFIRMATION OF THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF EXIDE HOLDINGS, INC. AND ITS AFFILIATED DEBTORS

I, Christopher Robinson, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information, and belief:

1.      I am a Managing Director at Ankura Consulting Group, LLC ("**Ankura**"), the financial advisor to Exide Holdings, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**").[2]

2.      I submit this declaration in support of the Debtors' request that the Court approve the *Third Amended Joint Chapter 11 Plan of Exide Holdings, Inc. and Its Affiliated Debtors* (as may be amended, modified, or supplemented from time to time).

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are Exide Holdings, Inc. (5504), Exide Technologies, LLC (2730), Exide Delaware LLC (9341), Dixie Metals Company (0199), and Refined Metals Corporation (9311). The Debtors' mailing address is 13000 Deerfield Parkway, Building 200, Milton, Georgia 30004.

[2]    Capitalized terms used herein but not otherwise defined shall have the respective meaning ascribed to such terms in the *Stock and Asset Purchase Agreement*, dated as of July 27, 2020, by and among Debtor Exide Technologies, LLC, as seller, Battery BidCo LLC, as buyer, and Atlas Capital Resources III LP, as guarantor (the "**Americas Purchase Agreement**"), or the *Debtors' (I) Memorandum of Law in Support of Confirmation of the Third Amended Joint Chapter 11 Plan of Exide Holdings, Inc. and Its Affiliated Debtors and (II) Omnibus Reply to Objections Thereto*, filed contemporaneously herewith.

3.      Except as otherwise indicated, all statements in this declaration are based upon my personal knowledge of the Company's (as defined below) operations and finances, personal knowledge gleaned during the course of my engagement with the Debtors, my discussions with the Debtors' senior management or members of the Ankura team, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the Debtors' operations and financial affairs.  I am authorized to submit this Declaration.  If called upon to testify, I could and would testify competently to the facts set forth herein.

## Qualifications

4.      I have over 14 years of experience providing financial advisory, valuation, and accounting services to boards, independent trustees, corporate management, internal counsel, and external counsel.  My areas of expertise include valuation and accounting issues, damages in complex commercial litigation, financial and forensic accounting investigations, tax controversy matters, and post-acquisition disputes where I have significant experience preparing forensic and other accounting related analyses, including identifying potential accounting issues, unwinding inappropriate accounting transactions, and quantifying the impact of adjustments to internal and external financial statements.  I also have significant experience preparing business valuation analyses for a variety of purposes, including for transactions (mergers, acquisitions, and divestitures), related party transactions, damages calculations, and other litigation purposes.  I have been retained by counsel on behalf of both buyers and sellers regarding post-acquisition working capital disputes in the healthcare, construction, and manufacturing sectors.

## Overview of the Working Capital Analysis

5.      In connection with the Americas Sale Transaction, the Debtors and Ankura reviewed and analyzed the shortfall alleged by the buyer, ACR III Edison Holdings LLC (f/k/a

2

Battery BidCo LLC) (the "**Americas Buyer**"), against the Debtors in connection with working capital adjustments required under the Americas Purchase Agreement (the "**Working Capital Analysis**").

6.      The Working Capital Analysis was based on my understanding that the Americas Purchase Agreement establishes procedures for adjusting the aggregate consideration paid for the Transferred Equity Interests and the Transferred Assets (collectively, the "**Company**") to account for the difference between $210 million (the "**Target Working Capital**") and the Net Working Capital of the Americas Business as of the Effective Time of the transaction (the "**Final Working Capital**").

7.      I further understand that the Americas Purchase Agreement required the Debtors to prepare a written statement at least two business days before the Closing setting forth their good faith estimate of the Net Working Capital of the Americas Business as of the Effective Time (the "**Estimated Working Capital**") and the amount of any working capital adjustment that would need to be made in connection with the Closing.  I also understand that the Americas Purchase Agreement required the Americas Buyer to provide a written statement setting forth the Americas Buyer's own good faith, proposed final calculation of the Net Working Capital of the Americas Business as of the Effective Time (the "**Proposed Final Working Capital**") and a description of any proposed changes to the Estimated Working Capital, attaching supporting schedules, working papers and all other relevant documents and details to enable a review thereof by the Debtors.  I understand that the Americas Purchase Agreement dictates that all calculations of Net Working Capital must be done in accordance with the same accounting principles, practices, methodologies, and policies, regardless of materiality, that were employed by Exide Technologies,

3

LLC, on and for the year ended March 31, 2020, to prepare its consolidated financial statements (the "**Transaction Accounting Principles**").

8.     In accordance with the procedures established in the Americas Purchase Agreement, at Closing, the Debtors credited the Americas Buyer approximately $10 million to address the difference between the Target Working Capital and the Estimated Working Capital delivered at the Closing.  When calculating the Target Working Capital and the Estimated Working Capital, the Debtors complied with the Transaction Accounting Principles.

9.     In conducting the Working Capital Analysis, the Debtors and Ankura reviewed the Proposed Final Working Capital calculations that the Americas Buyer prepared.   As discussed in further detail below, the Debtors and Ankura identified several calculations in which the Americas Buyer appears to have departed from the Transaction Accounting Principles or has not provided sufficient information to verify the accuracy of its calculations.  Based on information received and reviewed as of October 8, 2020,  approximately $14.6 million of the shortfall in Net Working Capital that the Americas Buyer has claimed in the Proposed Final Working Capital appears inconsistent with the Transaction Accounting Principles or is not currently supported by the facts and information provided.  A summary table showing the amounts identified to date is attached hereto as **Appendix A**.   The Debtors have shared a preliminary version of their Working Capital Analysis with the Americas Buyer.  The Debtors' Working Capital Analysis is ongoing, and the Americas Buyer continues to provide additional information, which the Debtors and Ankura continue to analyze and evaluate on an ongoing basis.  This additional documentation may lead to additional areas of potential dispute or may lead to a refinement of currently identified areas of potential dispute.

4

10.    Moreover, even if the Americas Buyer is able to provide additional information that justifies some of the calculations that appear to diverge from the Transaction Accounting Principles and calculations that are currently unsubstantiated, the Debtors and Ankura anticipate that the final amount of the Post-Closing Adjustment will still be well below the $14.8 million surplus that the Debtors are expected to have after paying all other wind-down expenses.

**Areas of Potential Dispute Related to the Proposed Final Working Capital**

11.    The Debtors and Ankura identified the following areas of potential dispute related to amounts contained within the Proposed Final Working Capital:

12.    ***Improper Calculation of Non-Performing Accounts Receivable (~$1.0 million).***  The Americas Buyer's calculation does not appropriately reflect the reserves already taken in the Company's books and records that are specifically related to Non-Performing Accounts Receivable.[3] These items include (i) bad debt provisions, (ii) credits less than 60 days past due, and (iii) accrued customer liabilities.

    i.    Bad Debt Provision. The accounting policy governing the provision for third party bad debts indicates that accounts receivable that are more than 120 days past due and less than 12 months past due include a reserve of 50% and accounts receivable that are more than 12 months past due include a reserve of 100%.  As such, the Company's bad debt provision is entirely comprised of a subset of the Non-Performing Accounts Receivable.  The Americas Buyer's calculation has failed to account for the reserve provisions that already existed on a subset of the Non-Performing Accounts Receivable.

    ii.    Credits Less Than 60 Days Past Due. The Company has historically issued credits (*i.e.*, reductions to accounts receivable) in order to resolve customer disputes or account for contractual obligations. These credits are listed as separate invoices within the accounts receivable listing and are not automatically applied or offset against existing invoices for that customer.  The Americas Buyer's

---

[3]    Non-Performing Accounts Receivable are defined in Exhibit E of the Americas Purchase Agreement as "*any accounts receivable that is more than sixty (60) days past due as calculated in the payment terms set forth in Part VII of Exhibit E, in each case as of the Effective Time.*"

calculation fails to apply credits aged less than 61 days past due for customers that had Non-Performing Accounts Receivable owed to the Company.

iii.   <u>Customer Liabilities</u>. The Company historically has accrued for customer liabilities related to contractual obligations, including but not limited to warranty provisions and rebates. These customer liabilities are ultimately relieved from the balance sheet upon the issuance of credits, which can be used to offset disputed receivables. A number of the customer liability accruals relate to specific customers, including customers that owe Non-Performing Accounts Receivable. The Americas Buyer's calculation fails to appropriately account for the customer liabilities already accrued, including those specifically relating to the Non-Performing Accounts Receivable.

13.      ***Improper Inclusion of Resolved Amounts as Part of Non-Performing Accounts Receivable (~$0.4 million).*** The Non-Performing Accounts Receivable detail includes amounts for certain customers where the overdue balances appear to have already been resolved, including Navistar, Mighty/MDSA/Gohner, and DFAS-Columbus/DFAS-JAIQB/Co. For each of these three customers, the bad debt provision account reconciliation workpapers, separately provided by the Americas Buyer, indicate that the overdue amounts had already been resolved and therefore did not require a bad debt provision. Accordingly, these invoices should not be included as part of Non-Performing Accounts Receivable for the purposes of the Americas Buyer's Proposed Final Closing Statement.

14.      ***Improper Inclusion of Customer "Defense Finance & Accounting Service" Accounts Receivable as Part of Non-Performing Accounts Receivable (~$0.6 million).*** Company personnel have advised that there was an issue with the documentation that was submitted along with invoices to customer "Defense Finance & Accounting Service" that otherwise would have been included as Non-Performing Accounts Receivable. Company personnel also noted that these invoices are expected to re-issued or re-submitted in accordance with the governmental process. Accordingly, these invoices have been delayed due to a

governmental administrative process and, accordingly, should not be included as part of Non-Performing Accounts Receivable.

15.      ***Failure to Account for Expected Warranty Expense When Calculating Non-Performing Accounts Receivable (~$0.7 million).***  In addition to customer-specific liability accruals mentioned previously, the Company also has an accrual on its balance sheet for expected warranty expense related to industrial customers.  This accrued liability is not tied to any specific customer, but instead based on average warranty claims experience for industrial customers on the whole.  Accordingly, the remaining Non-Performing Accounts Receivable amounts related to the industrial segment should be reduced by these accruals before the applicable 75% reserve is applied to these balances.

16.      ***Unsubstantiated Credit Memos (~$1.0 million).***  The Company issued $1.0 million of credit memos shortly before close, of which $0.8 million related to AutoZone, $0.1 million to BSI, and $0.1 million to Kroger.  The Debtors have requested, but have not yet received, further detail on the rationale or authorization related to these credit memos.  Absent this information, the Americas Buyer has not shown the issuance of these credit memos to be consistent with past practices.

17.      ***Unsubstantiated Large Customer Credit Balance (~$2.5 million).***  Within the accounts receivable detail provided by the Company, there are a number of customers with credit (*i.e.*, negative receivable) balances, including large credit balances for Electric Boat Corporation ($2.09 million), Gutor Electronic LTD ($0.27 million), and Nuclear Logistics ($0.18 million).  The Company has noted that the accounts receivable are negative because a payment was received in advance, but that the related project has not yet been completed.  Debtors and

7

Ankura are currently evaluating these credit balances based on recent information provided by Americas Buyer.

18.      ***Unsubstantiated In-Transit Inventory Balance (~$2.0 million).***      The balance of in-transit inventory appears inconsistent with prior periods.  Specifically:

iv.      The transportation segment balance decreased by $0.8 million between July 31, 2020, to August 25, 2020 (from $0.8 million as of July 31 to $0.0 as of August 25).

v.      The industrial segment balance decreased by $1.2 million between July 31, 2020, and August 25, 2020 (from $1.9 million as of July 31 to $0.7 million as of August 25).

19.      The Debtors have requested further detail and explanation for these substantial decreases, including the complete absence of any amounts for the transportation segment, but have not yet obtained such information.  Absent this information, the Americas Buyer has not shown the in-transit inventory accounting to be consistent with past practices.

20.      ***Unreconciled Obsolete Inventory (~$0.3 million).***      The accounting adjustment for inventory obsolescence reflected on the Proposed Final Closing Balance Sheet and as reported from Hyperion Financial Management amounts to $2.2 million as of August 25, 2020. The account reconciliation detail provided by the Company, however, only amounts to $1.9 million.  The Debtors have brought this $0.3 million variance to the attention of the Company. Debtors and Ankura are currently evaluating this discrepancy based on current information provided by Americas Buyer.

21.      ***Unsubstantiated Capitalized Variance (~$3.2 million).***      The capitalized variance account included in the Company's balance sheet reflects an accounting adjustment to account for the difference between actual production cost incurred and the standard cost assumption.  To the extent all of the inventory produced is not sold in the same month, some of the production cost variance would be capitalized and recognized in subsequent periods as the

8

inventory is sold. The Debtors have reviewed the supporting workpapers that calculated the capitalized variance account balance for the Transportation and Industrial segments as of August 25, 2020. The formulas used to calculate the August 2020 capitalized variance balances appear consistent with certain prior periods. But there also are variances between the historical calculation and the consolidated reported balance for May/June, which may relate to a standard cost change or some other change in methodology. Additionally, the Debtors were not able to tie out the inputs used in the calculation for inventory, sales, and COGS line items to the reported financials. A request to the Company for assistance with this is outstanding. Based on the information provided to date, the change in capitalized variance cannot be substantiated. Absent this information, the Americas Buyer has not shown the capitalized variance calculation to be consistent with past practices.

22.    ***Improper Exclusion of Prepaid Rent (~$0.1 million).*** As part of the closing process, the Company booked an adjustment to reclass a prepaid rent balance associated with corporate headquarters to the "Estate" balance sheet, resulting in it being excluded from the working capital calculation. The Company used those headquarters in the month of September and, consistent with historical practice, should be included as part of the Proposed Final Closing Statement.

23.    ***Overstated Freight and Logistics Accrual Relative to Historical Trends (~$0.6 million).*** Freight and logistics vendors make up at least $5.0 million of the Company's reported liabilities, including $2.6 million in accounts payable and another $2.4 million included in accruals. Given an average weekly spend on freight and logistics of $0.86 million, the freight and logistics accrual appears overstated. Even if we were to assume five weeks were owed, the total amount owed at that run-rate would only be $4.3 million. Additionally, it should be noted,

9

that the $2.6 million of accounts payable includes $1.9 million of August invoices with most vendors having already submitted invoices dated through mid-August. As such, the $2.4 million accrual for freight and logistics costs not yet invoiced appears to be overstated, and a reduction of at least $0.6 million appears warranted.

24. ***Overstated Benefits Accrual Relative to Historical Trends (~$0.7 million).*** Health and pharmacy benefit vendors make up at least $4.1 million of the Company's reported liabilities, including $0.3 million in accounts payable and another $3.8 million included in accruals. Given an average weekly spend on this category of $0.42 million, this accrual appears overstated and inconsistent with historical trends. Even if one were to assume eight weeks were owed, the total amount owed at that run-rate would only be $3.4 million. As such, a reduction of at least $0.7 million appears warranted.

25. ***Improper Inclusion of Non-Current Deferred Rent (~$0.5 million).*** The Company has $0.8 million of deferred rent liabilities on its balance sheet (excluding estate liabilities). The majority of this deferred rent amount relates to the accounting for a lease at the Kansas City site. The amount reported on the closing balance sheet includes the entirety of the deferred rent expected to be realized over the course of the life of the lease through 2031. Given that this account is only supposed to reflect the current liability (next 12 months), this liability is overstated.

26. ***Overstatement of Employee Liabilities (~$0.3 million).*** The Debtors have reviewed the account reconciliations related to the employee liabilities. The calculation methodology for accrued wages uses gross wages plus the employee portion of payroll taxes. The use of gross wages, rather than net wage rates, results in an overstatement of the liability since those deductions for other benefits are returned to the Company's accounts to be used for the

payment of those benefit providers (with those amounts owed already being captured in other liability accounts).

27.    ***Unsubstantiated Rebates Accrual (~$0.7 million).***    Within the rebates accrual (and more specifically within JDE account #20123), there is an accrual for a marketing event that is being coordinated with one of the vendors (BCD) that is not scheduled to occur until 2021.    Given that the event has not yet occurred, it is not clear why the expense would be recognized in the current period.    Accordingly, this portion of the rebates accrual is inconsistent with GAAP and past practices.

28.    The Debtors and Ankura are continuing to review the Proposed Final Working Capital and may well uncover further discrepancies between the Americas Buyer's calculations and the Transaction Accounting Principles or other calculations that are not adequately supported by the information provided.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: October 12, 2020


*/s/ Christopher Robinson*
Christopher Robinson

Managing Director
Ankura Consulting Group, LLC

11

**APPENDIX A**

**Summary of Current Potential Closing Statement Working Capital Disputes**
**As of October 8, 2020**

**Summary Table**
**(Amounts in $ Millions)**

| Ref. | Description | | Amount |
|---|---|---|---|
| 1 | Improper Calculation of Non-Performing Accounts Receivable | $ | 1.0 |
| 2 | Improper Inclusion of Resolved Amounts as part of Non-Performing Accounts Receivable | | 0.4 |
| 3 | Improper Inclusion of Customer "Defense Finance & Accounting Service" Accounts Receivable as part of Non-Performing Accounts Receivable | | 0.6 |
| 4 | Failure to Account for Expected Warranty Expense when Calculating Non-Performing Accounts Receivable | | 0.7 |
| 5 | Unsubstantiated Credit Memos | | 1.0 |
| 6 | Unsubstantiated Large Customer Credit Balances | | 2.5 |
| 7 | Unsubstantiated In-Transit Inventory Balance | | 2.0 |
| 8 | Unreconciled Obsolete Inventory | | 0.3 |
| 9 | Unsubstantiated Capitalized Variance | | 3.2 |
| 10 | Improper Exclusion of Prepaid Rent | | 0.1 |
| 11 | Overstated Freight and Logistics Accrual Relative to Historical Trends | | 0.6 |
| 12 | Overstated Benefits Accrual Relative to Historical Trends | | 0.7 |
| 13 | Improper Inclusion of Non-Current Deferred Rent | | 0.5 |
| 14 | Overstatement of Employee Liabilities | | 0.3 |
| 15 | Unsubstantiated Rebates Accrual | | 0.7 |
| | **Total** | **$** | **14.6** |