# EXHIBIT 9



2700 S. Indiana Street
Vernon, CA 90058
323-262-1101 tel
323-262-0642 fax

April 22, 2020

<u>Via-Mail</u>

Mr. Peter Ruttan
Unit Chief, California Department of Toxic
Substances  Control
Exide-Corrective Action and Data
  Management Branch
8810 Cal Center Drive
Sacramento, CA  95826

Re:   Response to April 20, 2020 Letter re: Exide's March 21, 2020 Emergency Circumstances/*Force Majeure* Notification to DTSC Regarding Exide Technologies, LLC Vernon, CA

Dear Mr. Ruttan:

 I am writing to CalEPA DTSC ("DTSC") on behalf of Exide Technologies, LLC ("Exide") in response to DTSC's April 20, 2020 letter wherein DTSC "directs" Exide to undertake certain measures and responds, in part, to Exide's March 21, 2020 declaration of *force majeure*.  DTSC previously acknowledged receipt of Exide's declaration on March 27, 2020 and did not challenge Exide's declaration of *force majeure* at that time.

 Approximately a month has passed since Exide notified DTSC of an event of *force majeure*.  In responding to DTSC's April 20, 2020 letter within three business days, Exide is timely and responsibly managing legal, safety, logistical and other considerations at the former Exide facility at 2700 South Indiana Avenue, Vernon, CA 90058 (the "Vernon Facility").

 Since the March 21, 2020 declaration, Exide has kept DTSC updated regarding the safety, stabilization, security, monitoring and other measures Exide is taking to ensure the Vernon Facility in its currently idled mode poses no health or safety risk to the public, workers, or agency officials who may need to access the site.  DTSC has reviewed and commented upon, but not rejected, any such measures.  Indeed, Exide's ongoing measures document an absence of unauthorized releases of hazardous substances from the Vernon Facility. DTSC has not identified any unsafe or unstable condition at the site.  Exide also has continued to monitor the

255564128v.5

Mr. Peter Ruttan
California Department of Toxic Substances Control
April 22, 2020
Page 2

evolving COVID-19 pandemic, as well as governmental orders, agency guidance and other factors relevant to the Vernon Facility.

  As a reminder, Exide's March 21, 2020 declaration of a *force majeure* event was made with reference to the February 25, 2002 Corrective Action Consent Order ("2002 CACO") and the November 21, 2014 Stipulation and Order, HWCA No. 2014-0489, as amended ("2014 Order"). Specifically, Exide sent DTSC a formal notification that ongoing closure, corrective action, decommissioning, investigation and reporting activities being undertaken pursuant to the 2002 CACO and the 2014 Order were being suspended until further notice. Exide provided DTSC and the authorities copied on the letter with notice of a *force majeure* event pursuant to Paragraph 45 of the 2014 Order and, to the extent applicable, the 2002 CACO, and as otherwise allowed by law or equity with regard to all permits, plans and authorizations applicable to the Vernon Facility. Exide met all applicable terms in Paragraph 45 to support its declaration.

  Exide did not send DTSC a "proposal," the term DTSC uses in its April 20, 2020 letter. To the extent DTSC asserts it is responding to a "proposal," it is incorrect. Paragraph 45 of the 2014 Order dictates how DTSC procedurally must respond to a *force majeure* declaration. Moreover, the very nature of a *force majeure* event is that the circumstances are beyond Exide's control. This is not simply a bi-lateral dialogue between parties to the 2014 Order but, rather, a circumstance involving consideration of issues and factors beyond that order.

  Exide cited three primary reasons for suspension of activities: (1) the COVID-19 pandemic; and/or (2) to comply with the March 19, 2020 "Safer at Home Order for Control of COVID-19" issued by Muntu Davis, Health Officer, County of Los Angeles (the "LA County Order"); and/or (3) Executive Order N-33-20 (State of California) issued by Governor Gavin Newsom on March 19, 2020 ("CA Order"). DTSC has not responded to all three of these reasons, citing only the latter two in its April 20, 2020 letter. Accordingly, DTSC's April 20, 2020 letter is incomplete and thus insufficient under the 2014 Order. All three reasons remain relevant and, in the last month, additional relevant governmental orders and guidance have issued. Consequently, this communication not only responds to DTSC's April 20, 2020 letter, but continues and expands (based on additional governmental orders, discussed below) Exide's original March 21, 2020 declaration of *force majeure.*

  <u>The CA Order</u>. Paragraph 1 "order[s] all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors." DTSC's April 20, 2020 letter cites no support that the suspended activities at the Vernon Facility comprise "federal critical infrastructure sectors." DTSC's assertion is unsupportable on its face. The Vernon Facility provides no goods or services whatsoever, let alone any critical goods or services. The facility provides no food, energy, shelter, medical care, fuels or equipment, infrastructure support (e.g., engineering, maintenance), transportation, drinking water, sanitation, fire/life safety response or any other

Mr. Peter Ruttan
California Department of Toxic Substances Control
April 22, 2020
Page 3

good or service essential for human health or safety or the support thereof during the COVID-19 pandemic (or otherwise).

Rather, the Vernon Facility is the subject of a non-time critical investigation and decommissioning action. The site is secure and safe. DTSC has publicly acknowledged that compliance with the CA Order (and local orders) may pose challenges for facilities (*e.g.,* DTSC's April 15, 2020 ADVISORY ON THE MANAGEMENT OF HAZARDOUS WASTE BY GENERATORS, TRANSPORTERS, ELECTRONIC WASTE HANDLERS, AND TIERED PERMIT FACILITIES DURING THE CORONAVIRUS DISEASE 2019 (COVID-19) PANDEMIC). Those very challenges are manifest at the Vernon Facility. We do not believe DTSC may by letter to an individual facility override the CA Order. Rather, as DTSC itself seems to have recognized, DTSC must allow facilities to notify DTSC when routine compliance is not possible due to governmental orders like the CA Order. Indeed, DTSC's April 15, 2020 guidance noted above instructs persons to notify DTSC when compliance challenges arise. Exide has done exactly that, pursuant to the 2014 Order and the 2002 CACO, which are the governing instruments for the Vernon Facility.

Importantly, the CA Order references "federal critical infrastructure sectors." Exide's understanding of this phrase is in accord with USEPA's interim guidance on work at RCRA/ CERCLA and similar sites. On April 10, 2020 US EPA released guidance on management of field work in light of the COVID-19 pandemic. Generally, USEPA directs that COVID-19 impacts should be assessed on a site-specific basis. Having said that, USEPA clearly prioritizes worker, community, and national health and safety considerations, particularly controlling the spread of COVID-19. Consequently, USEPA expressly prioritizes compliance with the CA Order and local health and safety orders (like the LA County Order) (Guidance, p. 2).

Then, additionally, USEPA's Guidance, (p. 4) identifies the relevant considerations as to whether field work must continue or can be suspended. USEPA exclusively focusses on "imminent," "time critical," and "emergency" adverse effects to prevent "catastrophic" public or environmental health or safety risks. Under each USEPA criterion, work at the Vernon Facility would *not* be classified as "essential". In fact, under the USEPA criteria for operations that should remain ongoing (e.g., providing clean drinking water, preventing explosive materials storage) it is patently clear that the Vernon Facility is exactly the sort of facility that *can* be subject to a temporary suspension. USEPA's Guidance emphasizes that any declaration of *force majeure* must comport with the governing instruments, not just be proclaimed generically. In the case of the Vernon Facility, of course, Exide's March 21, 2020 declaration of force majeure was issued in full accord with Paragraph 45 of the 2014 Stipulation and Order.

In short, DTSC has cited no support for its assertion that the non-time critical Vernon Facility work represents any "federal critical infrastructure sectors." Instead, the guidance available is to the contrary. Given the CA Order applies to all workers accessing the Vernon

Mr. Peter Ruttan
California Department of Toxic Substances Control
April 22, 2020
Page 4

Facility and governs statewide, DTSC has provided no legal grounds allowing Exide to conclude that DTSC may by a letter directed to one entity override the Governor's CA Order. Exide's conclusion that the CA Order compelled its March 21, 2020 *force majeure* declaration remains unchanged and, in fact, is reinforced by subsequent USEPA Guidance.

<u>LA County Order, and the Superseding April 10, 2020 Order</u>. The shuttered Vernon Facility is not an "Essential Business" under the LA County Order. DTSC has not even tried to argue to the contrary, nor could it plausibly do so. The Vernon Facility activities also did not qualify for an exception under LA County Order paragraph 15, as the facility provides no "governmental or other essential services (those that meet basic human needs)." Finally, the Vernon Facility activities could not be excepted as being necessary to the "essential infrastructure, including but not limited to, public health, public works, . . . .water, sewer, gas electrical, . . ." as detailed in paragraph 15.b. The LA County Order adopts specific definitions applicable to the Vernon Facility. As explained above, a non-time critical removal action which will take many years to complete at a facility that provides no essential goods or services, or support therefor, simply is not "essential" in any respect to support the residents of Los Angeles County in surviving the COVID-19 pandemic.

On April 10, 2020 the Los Angeles County Health Officer, Muntu Davis, superseded the LA County Order and extended the term of his new order to May 15, 2020 (the "April LA County Order"). The new order expands the "social distancing" and other measures residents must implement to halt the spread of COVID-19, including wearing masks when patronizing "Essential Businesses." In some respects this order is even stricter than its predecessor; "This Order specifically requires all businesses to cease in person operations and remain closed to the public, unless the business is defined as an Essential Business by this Order." (p. 1). Reviewing the Section 13 list of "Essential Businesses" makes clear the Vernon Facility does not even remotely qualify as such. Section 17 of April LA County Order, however, does allow "the minimum necessary activities to maintain and protect the value of the business's inventory and facilities; ensure security, safety, and sanitation; . . . ." Hence Exide's ongoing stabilization, monitoring and security measures as previously detailed for DTSC are permissible. What is not allowed is a re-start of all routine decommissioning and closure operations, which would involve (est.) over 30-40 persons. Accordingly, Exide's March 21, 2020 *force majeure* declaration is now hereby expanded to reference the April LA County Order.

Of significance, the April LA County Order purports to be "issued to comply with" (p. 1) the CA Order, meaning the County sees itself as in accord with the Governor (i.e., persons in Los Angeles County who do not comply with the April LA County Order arguably risk being identified locally as violating both the State and County orders). To avoid any doubt, "[w]here a conflict exists between this Order and any state public health order related to controlling the spread of COVID-19 during this pandemic, the most restrictive provision controls." (p. 8). The April LA County Order thus expressly commands residents and businesses within the County to

Mr. Peter Ruttan
California Department of Toxic Substances Control
April 22, 2020
Page 5

adhere to its strict standards, virtually without exception. This "supremacy proclamation" did not appear in the prior LA County Order and suggests the County is particularly committed to local compliance with its mandates.

DTSC's April 20, 2020 letter does not even reference the April LA County Order. Given Exide has now added this order as among the reasons supporting its updated *force majeure* declaration, DTSC is entitled to respond. There is, however, in our view no way to interpret this order to allow the Vernon Facility to recommence non-time critical actions. It simply prohibits such activities during the term. Violation of the April LA County Order is identified as a crime. Exide will not place itself in a position of committing a crime. Particularly given the County has taken extra care to assert the supremacy of its health directive mandates within the Los Angeles Public Health Jurisdiction, we cannot read DTSC's April 20, 2020 letter to Exide as modifying or excusing any terms of the April LA County Order. Thus, DTSC's "directive" to restart work at the Vernon Facility is inapposite. Indeed, DTSC's April 20, 2020 letter states "Exide employees and contractors must comply with all federal, state and local health and safety measures to control the potential spread of COVID-19." In Los Angeles County, such compliance requires adherence in full with the April LA County Order.

City of Vernon April 13, 2020 Order. On April 13, 2020 the City of Vernon issued an order respecting the COVID-19 pandemic. The Vernon Order requires, among other measures, compliance with the April LA County Order. Accordingly, all of the considerations set forth above apply with equal force to maintain compliance with the Vernon Order.

The COVID-19 Pandemic. DTSC's April 20, 2020 letter does not address one of the three reasons Exide cited to support its March 21, 2020 *force majeure* declaration. Accordingly, DTSC's April 20, 2020 letter is incomplete and does not suffice to "direct" Exide to submit health and safety work plans and to commence closure and decommissioning activities.

There are many specific practical concerns supporting Exide's *force majeure* declaration related to the pandemic. The nature, use, cost, timing and reliability of tests remain uncertain. Who can or must administer COVID-19 tests is uncertain. Can employers rely on worker self-reporting of health status? Who bears responsibility if any worker or onsite contractor is ill, becomes ill, or infects other workers, or their families? Most employers are not well-positioned to administer medical tests, so widely accessible third-party providers must appear. Related issues arise with transportation logistics. Are workers prohibited onsite if they cannot drive themselves, and must carpool, where "social distancing" measures cannot be deployed in most cases? Who is responsible if workers do not deploy masks or practice social distancing, whether in private vehicles with others or while using public transportation or onsite?

All of these considerations are fluid and evolving. The examples above are hardly exhaustive. DTSC has written "Exide is responsible for the health and safety of its employees

Mr. Peter Ruttan
California Department of Toxic Substances Control
April 22, 2020
Page 6

and contractors." What the foregoing considerations plainly illustrate is that Exide cannot, at this time, responsibly prepare a "plan to comply with COVID-19 measures" as DTSC has directed.[1] There are far too many uncertainties, which is the essence of a *force majeure* event. The one thing that is clear, however, is that present "compliance with COVID-19 measures" means compliance with the CA Order, the April LA County Order and the Vernon Order, all of which prohibit re-start of decommissioning and closure work. This is not fanciful avoidance. The considerations cited above are merely initial and obvious, and many additional challenges no doubt will require management. We frankly are surprised that DTSC would even consider placing so many workers and their families at risk during what seems to be a peak, or a near peak, outbreak in Los Angeles County, for that is what DTSC is attempting to direct Exide to do, given it does not seem possible at present to create a work plan which "manages away" the currently uncontrolled risks posed by the COVID-19 pandemic and which complies with the applicable governmental orders.[2]

Closing Comments. As noted in its March 21, 2020 letter, Exide will continue to reassess security, safety and legal matters on an ongoing basis and reserves the right to modify security, stabilization and other efforts, as necessary. We remain available to discuss these measures and to reassess them on at least a weekly basis, if not more frequently if conditions warrant.

The COVID-19 pandemic, and/or the April LA County Order, and/or the Vernon Order and/or the CA Order continue to comprise a *force majeure event* within the meaning of Paragraph 45 of the 2014 Order and excuse, temporarily, Exide's performance under the 2002 CACO, the 2014 Order and all permits, plans and authorizations applicable to the Vernon Facility. In sending this response to DTSC's April 20, 2020 letter, which updates and expands Exide's original March 21, 2020 declaration of *force majeure*, Exide does not waive any rights, entitlements, legal or equitable positions under law or the 2002 CACO or the 2014 Order.

//

//

//

---

[1] DTSC's "directives" in the April 20, 2020 letter inherently cannot be met. DTSC directed submittal of a COVID-19 health and safety work plan on April 27, 2020, the very same date DTSC directed Exide to restart operations. Not only would this be an inadequate amount of time to develop such a plan, in light of the complexity of the issues, it affords no time for DTSC to review its prior recommencement of work, which DTSC indicated it must do. DTSC's timeline to implement its "directives" is inherently unachievable and thus Exide cannot proceed.
[2] We invite DTSC to share what terms it would include in an eventual health and safety plan addressing COVID-19 risks which complies with all COVID-19 mandates, particularly because DTSC is in a position to review "good ideas" generated throughout the state by parties at many sites.

Mr. Peter Ruttan
California Department of Toxic Substances Control
April 22, 2020
Page 7

    The undersigned is available via email (grace.yeh@exide.com), text or telephone (323-447-0919) to discuss the matters in this letter.

                                                Sincerely,

                                                Grace C. Yeh
                                                Executive Director
                                                Site Remediation, Closure and Compliance Operations
                                                Exide Technologies, LLC

cc:  (all via email)

Grant Cope, DTSC
Dan Gamon, DTSC
Su Patel, DTSC
Kevin Shipp, DTSC
Peter Thyberg, DTSC
Matt Wetter, DTSC
John Gasparovic, Exide
Keith Scott, Exide
Jully Sieglaff, Exide
Lacey Chitwood, Exide
Melissa Floyd, Exide
Larry Smith, Sanitation District of Los Angeles County
Flood Permits, Los Angeles County Public Works, Land Development
Angela Shibata, South Coast Air Quality Management District, Supervising AQ Engineer
Fredrick Agyin, Director, City of Vernon Health and Environmental Control Department