# EXHIBIT 10



# Department of Toxic Substances Control



**Jared Blumenfeld**
Secretary for
Environmental Protection

Meredith Williams, Ph.D.
Director
8800 Cal Center Drive
Sacramento, California 95826-3200



**Gavin Newsom**
Governor

July 3, 2020

Ms. Grace Yeh
Exide Technologies, LLC
2700 S. Indiana Street
Vernon, CA 90058

DTSC RESPONSE TO EXIDE'S FORCE MAJEURE DECLARATION AND DIRECTIVE
TO SUBMIT PLAN FOR RESUMPTION OF CLOSURE AND CORRECTIVE ACTION
WORK; EXIDE TECHNOLOGIES LLC, VERNON, CALIFORNIA; EPA ID
CAD097854541

Dear Ms. Yeh:

The Department of Toxic Substances Control (DTSC) has received Exide Technologies,
LLC's (Exide) April 22, 2020 letter responding to DTSC's April 20, 2020 directive to
resume closure activities. Exide's April 22 letter reasserts, further details, and updates
Exide's position taken in a March 21, 2020 letter.[1] In the March 21 letter, Exide states
that the COVID-19 pandemic, and related state and local orders, constitute a *force
majeure* event under the November 1, 2014 Stipulation and Order, HWCA No. 2014-
0489, as amended (2014 Order), and to the extent applicable, the 2002 Corrective
Action Consent Order (CACO) (jointly referred to as the "Cleanup Orders"), and as
otherwise allowed by law or equity. As detailed below, DTSC disagrees with Exide's
reasoning and hereby directs Exide to resume work no later than July 13, 2020. As
explained below, Exide has failed to establish that there is a continuing *force majeure*
event that prevents it from performing the work that is required under the 2014 Order or
that it is otherwise unable to perform work under the Cleanup Orders to ensure public
health and safety at and around the site.  Specifically, the state and local orders
applicable to the COVID-19 pandemic do not render Exide unable to perform work
under the Cleanup Orders.[2] Exide filed for bankruptcy under Chapter 11 on May 19,
2020. This filing does not excuse Exide's obligation to perform work under the Cleanup
Orders.

---

[1] DTSC and Exide also exchanged correspondence on May 14 and May 15, 2020, regarding Exide's Bi-
Monthly Reports submitted pursuant to the CACO. DTSC's May 14 letter briefly summarized the position
set forth in this response letter, which will also address issues raised in Exide's May 15 response to
DTSC.  In the Exide's May 15 letter, Exide alluded to DTSC's planned resumption of lead abatement
work; that work resumed, as planned, beginning May 18, 2020.
[2] DTSC notes that the CACO does not have a *force majeure* clause.

Ms. Grace Yeh
July 3, 2020
Page **2** of **5**

**Asserted Sources or Bases for Exide's *Force Majeure* Position**

1. <u>State COVID-19 Executive Order</u>

Exide's assertion that the Executive Order N-33-20 issued by Governor Gavin Newsom on March 19, 2020 (CA Order) prohibits it from continuing closure and corrective action work is incorrect. The CA Order directs all residents to stay at home or their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors or in additional sectors that the State Public Health Officer has designated as critical in order to protect the health and well-being of all Californians. (CA Order, ¶ 1.) The State Public Health Officer has identified "workers who support hazardous materials response and cleanup" as essential critical infrastructure workers who are critical to public health and safety.[3] "[H]azardous materials response and cleanup" work includes the closure and corrective action activities under the Cleanup Orders. Furthermore, the designation of "hazardous materials response and cleanup" is essential to the public health and is made without limitation.

Exide's contention that facility closure is stable and that it is a non-time critical activity is incorrect. In fact, there is time-critical work that needs to be done, including but not limited to the following:

A. Exide's full enclosure unit (FEU) has already had multiple tears since closure began, some of which have led to notices of violation issued by South Coast Air Quality Management District and DTSC.  The FEU is a temporary structure with a finite service period.  Unnecessarily extending the service period creates an unacceptable risk of release of hazardous substances due to tears or other deterioration related failure.

B. As described in DTSC's Interim Measures Order dated July 3, 2020 there is a substantial amount of unsecured lead-contaminated dust outside of the FEU.

The fact that closure and corrective action activities may take several years to complete does not negate the immediate threat to human health and the environment.[4] As such, the CA Order does not prohibit Exide from carrying out closure and corrective action activities and is not a basis to assert *force majeure* under the 2014 Order or otherwise render Exide unable to perform work under the Cleanup Orders.

---

[3] The most recent version of the State Public Health Officers' essential work guidance is available at https://covid19.ca.gov/essential-workforce/ and was most recently updated on April 28, 2020.  However, the previous (March 22, 2020) version of this guidance included identical text stating, in Section 11, "Workers who support hazardous materials response and cleanup."

[4] Not only does the CA Order allow this work, but Exide's reliance on its interpretation of US Environmental Protection Agency (US EPA) Guidance, as set forth in its April 22 Letter, is inapplicable because this guidance is directed to US EPA Regional Administrators. Accordingly, Exide's contentions that relate to the substance of the US EPA guidance document are irrelevant and will not be further addressed in this letter. By not addressing Exide's interpretation of the US EPA guidance document, DTSC is not agreeing with Exide's contentions and reserves its rights to further respond, if necessary.

2. <u>Local Orders</u>

The local orders do not prohibit Exide from performing closure and corrective action work under the Cleanup Orders. Exide's closure and corrective action work is not prohibited by the March 19, 2020 "Safer at Home Order for Control of COVID-19" issued by Muntu Davis, Health Officer, County of Los Angeles, as amended and superseded on June 28, 2020 (LA County Order) and the City of Vernon Order, issued on May 13, 2020.

The initial LA County Order, issued on March 19, did not apply to Essential Infrastructure and allowed Essential Businesses to continue, as detailed in that order. The June 28 order, which supersedes previous LA County Orders, continues to allow these activities and allows the conditional reopening of additional activities and business sectors with modifications to lower the risk of transmission of COVID-19 and to ensure the continuance of social distancing and other infection control protocols.

Closure and corrective action activities are "Essential Infrastructure" under the LA County Order, as these activities constitute "public health operations,…solid waste collection, removal and processing,…flood control and watershed protection,…" (See LA County Order, ¶ 17.) Closure and corrective action activities are "public health operations," as this term necessarily includes hazardous waste response activities, which are critical to public health and consistent with its inclusion in the CA Order's designation of "Essential Critical Infrastructure Workers," as discussed above.

Closure and corrective action activities are essential infrastructure, as these activities include or may lead to solid waste (in this case hazardous waste) removal and processing.[5] Closure and corrective action work are also essential infrastructure to the extent these activities are necessary to protect the watershed, which includes groundwater, from contamination.

Not only are the closure and corrective action activities "Essential Infrastructure," as discussed above, but "[c]omplying with an order of law enforcement," in this case the Cleanup Orders, is permitted under the LA County Order. (See LA County Order, ¶ 15(d).) Also, as to closure activities, these are also independently allowed under the LA County Order, as these are construction activities, which are an "Essential Business." (See LA County Order, ¶ 18(w).)  It is not reasonable to decouple the definition of deconstruction/demolition operations, as is being undertaken as part of closure, to be outside the definition of "construction".  Demolition is a routine phase of commercial construction projects.

Finally, DTSC has conferred with Los Angeles County and they concur that Exide's ongoing closure and corrective action activities are allowed under the LA County Order. As such, the LA County Order does not prohibit Exide from carrying out closure and

---

[5] The investigation work to determine the extent of the hazardous waste that must be removed is necessarily part of "solid waste removal" and is also allowed independently under the LA County Order, because it is a service or work necessary for the operation and maintenance of Essential Infrastructure. (See LA County Order, ¶ 17.)

corrective action activities and is not a basis to assert *force majeure* under the 2014 Order or otherwise render it unable to perform work under the Cleanup Orders. Relatedly, the Vernon Order, which incorporates the LA County Order requirements among other things, does not prohibit Exide from performing closure and corrective action activities. (See Vernon Order.)

   3. COVID-19 Pandemic

DTSC is aware of the logistical difficulties employers face in conducting essential business.  DTSC notes that other employers (*e.g.*, construction sites, grocery stores, health care workers, essential government businesses, and specifically nearby work at the Baker/Honeywell facility and DTSC lead residential cleanups) conduct essential activities daily, with newly-developed and implemented protective measures.

DTSC is unaware of any reason that Exide is not able to meet all federal, state and local health and safety and other social distancing measures to control the potential spread of COVID-19 while continuing standard health and safety measures that were in place before the COVID-19 pandemic. Exide is in a uniquely safer environment with more highly trained employees in higher levels of personal protective equipment (PPE) than is available for nearly all other industries conducting "essential critical infrastructure work." For instance, Exide and Exide's contractors (1) have been actively working in a contaminated environment for several years, (2) are trained in Hazardous Waste Operations and Emergency Response, including annual refreshers, (3) conduct most of the work with level C PPE, and (4) work at a facility closed to the public. While Exide will need to take additional precautions to maintain adequate social distancing during work coordination meetings, given the size of the Facility compared to the number of workers required daily, this can reasonably be accomplished.

**Conclusion**

For the reasons described above, nothing in Exide's March 21 or April 22 letters provides a basis for Exide's assertion of *force majeure*.  Furthermore, the continued cessation of work creates an imminent and substantial endangerment to public health and the environment, in violation of California law, and DTSC reserves the right take any necessary enforcement action if Exide does not resume work by July 13, 2020.

Exide is hereby directed to resume closure and corrective action work by July 13, 2020. Exide is also directed to submit a plan that describes how Exide employees and contractors will comply with federal, state and local measures to control the potential spread of COVID-19 when work resumes. This plan is due July 13, 2020. Exide must submit the plan prior to commencing work, but DTSC's approval of this Plan is not required prior to Exide's commencement of work.

DTSC staff are available to discuss appropriate work "ramp up", and coordination options as to work DTSC is doing at and near the site, to maximize worker safety and minimize potential spread of COVID-19. As such, the COVID-19 pandemic is not a

Ms. Grace Yeh
July 3, 2020
Page **5** of **5**

basis to assert *force majeure* under the 2014 Order or otherwise renders Exide unable to perform work under the Cleanup Orders.

If you would like to discuss further, please contact me at (916) 322-0504 or Grant.Cope@dtsc.ca.gov. Questions from Exide's legal counsel must be directed to DTSC's legal counsel, Senior Staff Counsel Peter Thyberg. Mr. Thyberg can be reached at (916) 255-3246, or Peter.Thyberg@dtsc.ca.gov.


Sincerely,


Grant Cope
Deputy Director
Site Mitigation & Restoration Program


cc: (via e-mail)
Keith Scott, Exide
Jully Sieglaff, Exide
Lacey Chitwood, Exide
Melissa Floyd, Exide
Tom Goslin, Weil, Gotshal and Manges
Judith Praitis, Sidley Austin

Su Patel, DTSC
Pete Ruttan, DTSC
Matt Wetter, DTSC
Dan Gamon, DTSC
James Andrews, DTSC
Kevin Shipp, DTSC
Peter Thyberg, DTSC
Dennis Ragen, AGO
Anthony Austin, AGO

Flood Permits, LA County Public
Works, Land Development
Freddie Agyn, City of Vernon
Jack Cheng, SCAQMD
Angela Shibata, SCAQMD
Fredrick Agyin, City of Vernon